**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **LESLIE MARQUEZ,** | § | |
| | § | |
| ***Plaintiff*,** | § | |
| **v.** | § | **EP- 25-CV-00478-ATB** |
| | § | |
| **FRANK BISIGNANO,** *Commissioner of Social Security Administration*, | § | |
| | § | |
| | § | |
| ***Defendant*.** | § | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision by the Social Security Administration (SSA). Pursuant to 42 U.S.C. § 405(g), Plaintiff Leslie Marquez, the claimant at the administrative level, appeals from the final decision of Defendant Frank Bisignano, the SSA's Commissioner, denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382 *et seq.* The parties consented to have the undersigned Magistrate Judge conduct all proceedings, including the entry of final judgment. For the reasons that follow, the Commissioner's decision is affirmed.

## I. BACKGROUND

On March 14, 2022, Marquez protectively filed an application for SSI based on disability, alleging disability beginning on December 15, 2009.[1] Subsequently, Marquez amended her disability onset date to March 14, 2022.[2] She alleged disability due to autoimmune hepatitis, hypermobility syndrome, attention-deficit/hyperactivity disorder (ADHD), depression, and

[1] Tr. of Admin. R. at 20 [hereinafter Tr.], ECF No. 6.

[2] *Id.* at 42 (Marquez's counsel requesting at a hearing that "we have an [S]SI only case, so [we] can amend to the application date of . . . 3/14/22, as her [disability] onset date"); *see also id.* at 43.

anxiety.[3] She was 20 years old when she applied for the benefits.[4] She graduated from high school and subsequently enrolled in college, though she has since paused her studies.[5] She never held a job.[6]

Marquez's application was denied by the SSA initially on December 3, 2022, and upon reconsideration on November 27, 2023. Thereafter, Marquez requested a hearing before an Administrative Law Judge (ALJ), and on October 30, 2024, ALJ Tammy Thames held a hearing.[7] At the hearing, Marquez, represented by her administrative counsel, and a vocational expert (VE) testified.[8] On November 26, 2024, ALJ Thames issued a written decision, wherein she found that Marquez was not disabled since March 14, 2022, and denied Marquez's claim.[9] On December 19, 2024, Marquez appealed to the Social Security Appeals Council for review of the ALJ's decision.[10] On August 14, 2025, the Appeals Council denied her request for review, finding no basis for changing the ALJ's decision.[11] The ALJ's decision thus became the final decision of the Commissioner,[12] and this appeal followed.

---

[3] *Id.* at 244.

[4] *Id.* at 240.

[5] *Id.* at 43, 245.

[6] *Id.* at 44, 244.

[7] *Id.* at 44.

[8] *Id.* at 36–37.

[9] *Id.* at 17, 30.

[10] *Id.* at 203.

[11] *Id.* at 7.

[12] *See* 42 U.S.C. § 405(g) (providing that a claimant may obtain judicial review of any "final decision" of the Commissioner of Social Security); *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th

On October 17, 2025, Marquez brought this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). On April 20, 2026, Marquez filed her opening brief, requesting that the Court reverse and remand the Commissioner's decision.[13] On May 8, 2026, the Commissioner filed a response brief in support of his decision,[14] and Marquez followed by filing a reply brief on May 22, 2026.[15]

## II. STANDARDS FOR JUDICIAL REVIEW

Judicial review, under 42 U.S.C. § 405(g), of the Commissioner's decision denying social security benefits is "highly deferential." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). Courts review the Commissioner's decision "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quotation marks and citation omitted).

Substantial evidence is "more than a mere scintilla," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), but "less than a preponderance of the evidence," *Schofield v. Saul*, 950 F.3d 315, 320 (5th Cir. 2020). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (internal quotes omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" under 42 U.S.C. § 405(g). *Id.* "A finding of no substantial

---

Cir. 2005) ("[W]hen the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision.").

[13] Pl.'s Br. at 18, ECF No. 9.

[14] Br. in Support of Comm'r's Decision [hereinafter Def.'s Resp.], ECF No. 12.

[15] Pl.'s Reply Br. [hereinafter Pl.'s Reply], ECF No. 14.

evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

In reviewing the Commissioner's decision, "the court scrutinizes the record to determine whether [substantial] evidence is present." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015). It may not "try the issues *de novo*" or "reweigh the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute its judgment for the Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia*, 880 F.3d at 704. "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508.

## III. THE SEQUENTIAL EVALUATION PROCESS AND THE ALJ'S FINDINGS AND CONCLUSIONS

To be eligible for SSI based on disability, the claimant must be "disabled" within the meaning of the Social Security Act. 42 U.S.C. § 1382(a).[16] The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A).

To decide whether a claimant is disabled, the Commissioner uses a sequential, five-step process that the SSA has established. 20 C.F.R. § 416.920(a)(4). Under that process, the Commissioner determines:

> (1) whether the claimant is performing substantial gainful activity (if so, [s]he is not disabled); (2) whether the claimant has a severe impairment (if not, [s]he is not disabled); (3) whether the claimant's impairment meets or equals one of the listed impairments set forth in Appendix 1 of the applicable regulations (if so, [s]he is disabled; if not, the inquiry proceeds to step four); (4) whether the claimant's residual functional capacity allows h[er] to perform h[er] past work (if so, [s]he is

[16] *See also Lyon v. Bowen*, 802 F.2d 794, 796 (5th Cir. 1986) ("To be eligible for SSI[,] an individual must be aged, blind, or disabled as defined in 42 U.S.C. § 1382c and have income and resources below the levels specified in 42 U.S.C. § 1382a.").

> not disabled); and, (5) if not, whether the claimant, considering h[er] residual functional capacity, age, education, and work experience, is able to adjust to other work.

*Jones v. O'Malley*, 107 F.4th 489, 492 (5th Cir. 2024) (internal citations omitted). "The burden of proof is on the claimant at the first four steps," *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017), and if she gets past these steps, "the burden shifts to the Commissioner on the fifth step to prove the claimant's employability," *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Kneeland*, 850 F.3d at 754. "The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* (brackets omitted); *see also* 20 C.F.R. §§ 416.920(e), 416.945(a)(1). "The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Kneeland*, 850 F.3d at 754.

* * *

Applying the five-step sequential evaluation process, ALJ Thames concluded that Marquez was not disabled. The ALJ's principal findings and conclusions at each step follow.

At step one, the ALJ found that Marquez had not engaged in substantial gainful activity since March 14, 2022, Marquez's amended alleged disability onset date.[17]

At step two, the ALJ determined that Marquez's autoimmune hepatitis, hypermobility syndrome, depression, and anxiety—the physical and mental conditions, which, according to

[17] Tr. at 22.

Marquez's allegations, limited her ability to work[18]—were "severe" impairments.[19] The ALJ also found that Marquez had additional severe impairments: to wit, inflammatory polyarthritis; undifferentiated connective tissue disease; adjustment disorder with mixed anxiety and depressed mood; and—as particularly relevant here, migraines.[20]

At step three, the ALJ determined that Marquez's impairments, alone or in combination, were not severe enough to meet or equal, in severity, any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and therefore did not qualify for presumptive disability.[21]

Next, before going to step four, the ALJ determined Marquez's RFC as follows:

> [Marquez] has the [RFC] to perform sedentary work as defined in 20 [C.F.R. §] 416.967(a) except she can stand/walk for a total of two hours in an eight-hour workday and sit for a total of about six hours in an eight-hour workday. She can occasionally climb ramps/stairs but never climb ladders, ropes, or scaffolds. She can occasionally balance stoop, kneel, crouch, or crawl. She should avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights. She retains the ability to understand, remember, and carry out simple instructions and perform simple tasks. She can attend and concentrate for two-hour periods with routine/customary breaks and pace and persist for eight-hour workday.[22]

At Step four, the ALJ determined that Marquez had no "past relevant work."[23]

At step five, the ALJ determined, based on the VE's testimony, that considering Marquez's RFC, age, education, and work experience, Marquez was capable of making a

---

[18] *Id.* at 244.

[19] *Id.* at 22 (citing 20 C.F.R. § 416.920(c)).

[20] *Id.*

[21] *Id.*

[22] *Id.* at 24–25.

[23] *Id.* at 29 (citing 20 C.F.R. § 416.965).

successful adjustment to other jobs that exist in significant numbers in the national economy—for example, food and beverage order clerk, final assembler, and cashier.[24] The ALJ therefore concluded that Marquez was not under a disability, as defined in the Social Security Act, since March 14, 2022, the date on which Marquez filed her application for SSI benefits, and through November 26, 2024, the date on which the ALJ issued her written decision.[25]

## IV. DISCUSSION

As mentioned above, the Court's review of the Commissioner's decision denying benefits is limited to two inquiries: whether the decision is supported by substantial evidence and whether the Commissioner used the proper legal standards. *Garcia*, *supra*, 880 F.3d at 704. Marquez assigns two errors to the ALJ's decision: (1) at step three, the ALJ failed to expressly analyze whether Marquez's migraines equaled Listing 11.02B and (2) the ALJ's RFC assessment is not supported by substantial evidence.[26] Below, the Court addresses each issue in turn.

### A. Step Three

Marquez argues that at step three, the ALJ failed to adequately analyze medical equivalency of her migraines to Listing 11.02B, and instead, the ALJ provided a cursory analysis, which is not a proper Listing analysis.[27] This was reversible error, claims Marquez.[28]

---

[24] *Id.* at 29–30.

[25] *Id.* at 30.

[26] Pl.'s Br. at 2, 8–9, 16–17.

[27] *Id.* at 2, 8.

[28] *Id.* at 6–7.

She relies on two Social Security Rulings (SSR), namely SSR 19-4p and SSR 17-2p, and *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007).[29]

At step three, a claimant "has the burden of establishing that his impairment meets or equals the criteria for presumptive disability described in the listings" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Whitehead*, 820 F.3d at 781. Primary headache disorders, including migraine headaches, are not included in the Listing of Impairments. *See generally* 20 C.F.R. Pt. 404, Subpt. P, App. 1; *see also* SSR 19-4p, 2019 WL 4169635, at *2, *7 (SSA Aug. 26, 2019). However, SSR 19-4p, which provides guidance on how the Commissioner evaluates primary headache disorders, states that a person with a primary headache disorder may be able to establish that her headache disorder is medically equivalent to epilepsy as listed in Listing 11.02B or 11.02D. SSR 19-4p, 2019 WL 4169635, at *7. At issue here, Listing 11.02B provides that epilepsy must be "documented by a detailed description of a typical seizure and characterized by . . . [d]yscognitive seizures . . . occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02(B).

Here, in her step-three analysis, the ALJ wrote the following about Marquez's migraines:

> The claimant's migraine disorder was considered according to Social Security Ruling 19-4p. However, although the claimant has a history of migraines, the evidence does not highlight frequent emergency room visits due to headaches[,] and there is no indication that a medical provider has suggested that the claimant's signs, symptoms, and limiting effects of headaches medically equal in severity to a listed impairment, including Listing 11.02.[30]

---

[29] *Id.* 7–10; *see also* Pl.'s Reply at 2 (arguing that the ALJ's "perfunctory" analysis "is simply not in accord with SSR 17-2p, SSR 19-4p, Listing 11.02B, and current case law" (citing *Audler*, 501 F.3d at 448)).

[30] Tr. at 23.

And, ultimately, at step three, the ALJ concluded that Marquez did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[31]

Marquez argues that the ALJ erred because she did not expressly analyze the criteria under Listing 11.02B or evaluate corresponding evidence in her decision.[32] According to Marquez, the ALJ had an affirmative duty under SSR 17-2p to explain her analysis and indicate the evidence used in such analysis.[33] Citing four treatment notes dated between July 2020 and June 2022, Marquez argues that at times, she suffers migraines "as many as every day for two consecutive weeks."[34] These treatment notes show that she reported having migraines "every day for two weeks,"[35] "every 1 or 2 weeks,"[36] and "1-2 per week"[37] (more on these reports later in Part III.B(1), *infra*). Had the ALJ analyzed this and other evidence, Marquez continues, the evidence would have demonstrated that Marquez's headaches medically equaled Listing 11.02B;[38] that is to say, according to Marquez, the ALJ committed a harmful error.

The Commissioner responds that the ALJ expressly considered Marquez's migraines, explicitly referenced SSR 19-4p, expressly noted the applicability of Listing 11.02, but found

---

[31] *Id*. at 22.

[32] Pl.'s Br. at 8; Pl.'s Reply at 3.

[33] Pl.'s Br. at 9.

[34] *Id*. at 10 (citing Tr. at 724, 738, 759, 776).

[35] Tr. at 724 (June 17, 2022).

[36] *Id*. at 738 (Oct. 4, 2021); *id*. at 759 (Dec. 21, 2020).

[37] *Id*. at 776 (July 17, 2020).

[38] Pl.'s Br. at 9.

that Marquez's migraines did not equal it, based on "the entire record."[39] The Commissioner disputes that SSR 17-2p imposes an affirmative duty to articulate as Marquez posits and argues that the ALJ was not obligated to expressly discuss the criteria of Listing 11.02B.[40] The Commissioner adds that the ALJ's step-three articulation accords with SSR 17-2p.[41]

SSR 17-2p provides that if an ALJ believes that "the evidence . . . does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the [ALJ] is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4 (SSA Mar. 27, 2017). Generally, "a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.* "An [ALJ's] articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a . . . court to determine the basis for the finding about medical equivalence at step 3." *Id.*

Here, in the RFC assessment section of the ALJ's decision, the ALJ provided a detailed explanation for why he concluded that Marquez's migraine disorder was not disabling, though the ALJ determined that the evidence supported including postural and environmental limitations in the RFC to account for the effects of Marquez's migraine disorder and other impairments.[42] And, at step three, the ALJ noted, and Marquez does not dispute, that the record does not reflect that "a medical provider has suggested that [Marquez's] signs, symptoms, and limiting effects of

[39] Def.'s Resp. at 5 (quoting Tr. at 22–23).

[40] *Id.*

[41] *Id.*

[42] Tr. at 27–28.

headaches medically equal in severity to a listed impairment, including Listing 11.02."[43] *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.").[44] Nor does the record contain any administrative finding that Marquez's migraine disorder equaled Listing 11.02B;[45] indeed, as the ALJ observed in the RFC assessment section of her decision, the state agency consultants (who reviewed the record at the initial and reconsideration stages of the administrative proceedings) did not even find that Marquez's migraine disorder was a severe impairment.[46]

The Court finds that the ALJ's explanation in her step-three analysis and RFC assessment is sufficient to allow the Court to determine the basis for the ALJ's medical equivalence finding. The Court concludes that the ALJ did not err by not expressly analyzing the Listing 11.02B

---

[43] *Id.* at 23.

[44] SSR 19-4p states that in determining whether a primary headache disorder is medically equivalent to epilepsy under Listing 11.02B, the ALJ considers an acceptable medical source's detailed description of a typical headache that includes: (1) "all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms)"; (2) "the frequency of headache events"; (3) "adherence to prescribed treatment"; (4) "side effects of treatment"; and (5) "limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day." SSR 19-4p, 2019 WL 4169635, at *7; *cf. also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02H2 ("We require at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures.").

[45] Tr. at 61–62, 70–71; *see also* SSR 17-2p, 2017 WL 3928306, at *3 ("To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following: 1. A prior administrative medical finding from [a state agency medical or psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or 2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or 3. A report from the [Appeals Council]'s medical support staff supporting the medical equivalence finding." (line breaks removed)).

[46] Tr. at 28.

criteria. *See Williams v. Bisignano*, No. 25-30258, 2026 WL 359915, at *2 (5th Cir. Feb. 9, 2026) (rejecting plaintiff-claimant's argument that the ALJ was required to explicitly analyze medical equivalence in the step-three determination, where the ALJ gave a detailed explanation throughout the sequential evaluation process for why he concluded that the claimant was not disabled (citing SSR 17-2p, 2017 WL 3928306, at *4)).

Moreover, *Audler*, on which Marquez relies, is distinguishable. In *Audler*, the ALJ concluded at step three that the medical evidence indicated that Audler, the claimant in that case, had impairments "that are severe . . . but not severe enough to meet or medically equal one of the [listed] impairments"; the ALJ "did not identify the listed impairment for which Audler's symptoms fail to qualify" or "provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment." *Audler*, 501 F.3d at 448. The Fifth Circuit held that "[s]uch a bare conclusion [was] beyond meaningful judicial review" and the ALJ erred in failing to state any reason for her adverse determination at step three. *Id.*

In contrast, ALJ Thames's analysis, quoted and discussed above, is "more robust than the 'bare conclusion' in *Audler*." *See Belk v. Colvin*, 648 F. App'x 452, 454–56 (5th Cir. 2016) (distinguishing *Audler* on the grounds that the ALJ identified Listings 1.02 and 1.06, noted that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment," and "discussed in a different part of her decision some of the medical evidence related to Belk's ability to walk and stand, concluding that Belk could walk and stand for two hours out of eight").

* * *

In sum, the Court overrules Marquez's first assignment of error that at step three, the ALJ inadequately analyzed medical equivalency of her migraines.

**B. The RFC**

As an initial matter, the Court makes two salient observations. First, at the administrative level, Marquez did not allege that her migraine disorder was disabling. In a disability report that Marquez completed, she alleged disability due to autoimmune hepatitis, hypermobility syndrome, ADHD, depression, and anxiety.[47] At the hearing before the ALJ, Marquez and her administrative counsel confirmed that these impairments were the sole basis for her claimed inability to work; neither identified migraines as an impairment.[48] Specifically, Marquez testified that her autoimmune hepatitis limited her ability to stand and caused her fatigue, nausea, and pain, while her hypermobility syndrome caused pain in her ankles, wrists, and back[49]—but she did not testify about the symptoms of her migraines or how her migraines limited her ability to work. Nonetheless, in the ALJ's decision, the ALJ independently considered her migraines at step two, step three, and the RFC stage.

Second, although Marquez's medical records indicate that she was diagnosed with migraines at age seven,[50] the record contains no medical opinion from her physicians addressing any work-related limitations or restrictions caused by her migraines. *See* 20 C.F.R. § 416.913(a)(2) (defining "medical opinion" evidence). After all, Marquez had "the burden to

---

[47] *Id.* at 244.

[48] *Id.* at 42, 44; *see also id.* at 312 (arguing that "[t]he evidence establishes that the claimant has multiple mental impairments (Major Depressive Disorder, ADHD, and anxiety disorder with panic attacks)." (Marquez's brief to the Appeals Council)).

[49] *Id.* at 45.

[50] Pl.'s Br. at 10, 14; Tr. at 26, 724.

prove [her] residual functional capacity," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also Vasquez v. O'Malley*, No. 24-50233, 2024 WL 4381269, at *2 (5th Cir. Oct. 3, 2024) (The claimant bears the "burden of proving disability through Step Four of the disability determination, including the RFC stage."); 20 C.F.R. § 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. . . . We will consider any statements about what you can still do that have been provided by medical sources."). And "if sufficient medical or other evidence is not provided by the claimant, [the ALJ] is required to make a decision based on the information available." *Vaughn v. Colvin*, 589 F. App'x 238, 244 (5th Cir. 2014) (internal quotes omitted).

With these observations, the Court turns to Marquez's arguments. She argues that the ALJ's RFC assessment is not supported by substantial evidence. She advances two sets of subsidiary arguments, which the Court addresses below.

**(1)**

Marquez argues that the ALJ reversibly erred by not including in the RFC Marquez's "proven limitations" from her migraines or failing to explain their omission in the RFC.[51] She claims that certain evidence supports these proven limitations and argues that had the ALJ properly included them, the resulting RFC would have been "more restrictive" and "work preclusive."[52] Citing four treatment notes, Marquez avers that she suffers from three to four migraines a week that are associated with blurred vision, photophobia, phonophobia, tinnitus, nausea, and dizziness.[53] She posits that these symptoms warrant an RFC limitation (or as she

---

[51] Pl.'s Reply at 3–4; *see also* Pl.'s Br. at 16–17.

[52] *See* Pl.'s Br. at 18–19; Reply at 4.

[53] Pl.'s Br. at 16 (citing Tr. at 724); *see also* Pl.'s Reply at 3–4 (citing Tr. at 722, 724, 727, 738, 759, 776, 781).

puts it, "accommodation") that she would be "off task" because she "would need to find a quiet, dark place to lay down to assuage her photophobia, phonophobia, and dizziness."[54] But, she adds, there is no such limitation in the RFC as formulated by the ALJ.[55]

As mentioned earlier, *see* Part IV.A, *supra*, the cited treatment notes show that Marquez reported having migraines "every day for two weeks,"[56] "every 1 or 2 weeks,"[57] and "1-2 per week."[58] These treatment notes are from Dr. Benjamin Carcamo and concern Marquez's visits on July 17, 2020, December 21, 2020, October 4, 2021, and June 17, 2022. They show that during each visit, Marquez's chief complaint was about the symptoms of her autoimmune hepatitis and hypermobility syndrome.[59] In each set of treatment notes, Dr. Carcamo noted, under the sections entitled "Review of Symptoms" and "Discussion," that Marquez "gets" or "would get" "right temporal headaches with blurred vision, photophobia, phonophobia, tinnitus, nausea and dizziness as frequent as 3-4 times a week."[60] These notations thus appear to be based on Marquez's reports to the doctor.[61]

Importantly, as the Commissioner points out, during the same period as when Marquez reported the frequency and symptoms of her migraines to Dr. Carcamo, Marquez repeatedly

---

[54] Pl.'s Br. at 16–17.

[55] *Id.* at 17.

[56] Tr. at 724 (June 17, 2022).

[57] *Id.* at 738 (Oct. 4, 2021); *id.* at 759 (Dec. 21, 2020).

[58] *Id.* at 776 (July 17, 2020).

[59] *Id.* at 721, 735, 756, 773.

[60] *Id.* at 724, 727, 738, 741, 759, 764, 781.

[61] *Cf. id.* at 724–25 (noting findings from "Physical Exam" (Dr. Carcamo's treatment notes from Marquez's visit on June 17, 2022), *cited in id.* at 26 (the ALJ's decision).

denied having frequent headaches or migraines to other doctors.[62] For example, Marquez visited Dr. Richard Guerrero on June 24, 2022—a week after she visited Dr. Carcamo on June 17, 2022.[63] Dr. Guerrero noted, under the "review of systems" section of his treatment notes, that Marquez "[d]enie[d] dizziness, fainting, frequent headaches, migraine, numbness or tingling, seizures, tremors, [and] vertigo."[64] The record also shows that during a visit with Dr. Patricia Rojas-Mendez on March 10, 2020, Marquez reported that she "ha[d] migraines weekly," but "[d]enie[d] any auras"[65]; that was two years before Marquez's alleged disability onset date, March 14, 2022. Moreover, as the ALJ pointed out in discussing Marquez's migraines, Marquez's neurological examination has been primarily unremarkable since 2022;[66] the ALJ's statement is supported by the medical records, including Dr. Carcamo's and Dr. Guerrero's treatment notes.[67]

The record thus contains mixed evidence about the frequency and symptoms of Marquez's migraines. And the ALJ's decision reflects she considered this evidence insofar as she cited the exhibits that contain the above-mentioned treatment notes—albeit for other

---

[62] Def.'s Resp. at 7 (citing Tr. at 953, 958, 967, 1047, 1050, 1053, 1056, 1059, 1062, 1068, 1071, 1074, 1077, 1080, 1202, 1205, 1221, 1224, 1227).

[63] *Compare* Tr. at 1055 (Dr. Guerrero's treatment notes), *with id.* at 721 (Dr. Carcamo's treatment notes).

[64] *Id.* at 1056.

[65] *Id.* at 967.

[66] *Id.* at 27; *see also e.g.*, *id.* at 725 (Dr. Carcamo's treatment notes dated June 17, 2022); *id.* at 1118 (Dr. Guerrero's treatment notes dated January 30, 2024).

[67] *E.g.*, *id.* at 725 (Dr. Carcamo's treatment notes dated June 17, 2022); *id.* at 1118 (Dr. Guerrero's treatment notes dated January 30, 2024).

information.[68] Given that Marquez never alleged that her migraines were disabling or testified to the effects of her migraines on her ability to work, the ALJ was free to reconcile and weigh this mixed evidence and conclude that her migraine disorder was not disabling or work preclusive—contrary to Marquez's arguments. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence."); *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("[T]he ALJ is not required to explicitly reconcile every conflicting shred of medical evidence." (cleaned up)); *see also Wilson v. Barnhart*, 210 F. App'x 448, 450–51 (5th Cir. 2006) (rejecting plaintiff-claimant's argument that the ALJ erred by ignoring evidence that she suffered from depression, reasoning that the plaintiff did not assert that she was depressed in her application or at the hearing and the only evidence of depression she cites is one page out of the hundreds of pages of medical records in which her physician indicates "possible depression").

Likewise, the Court cannot say that the ALJ erred by not including an "off-task" limitation in the RFC. Marquez contends that such a limitation is warranted because she "would need to find a quiet, dark place to lay down to assuage her photophobia, phonophobia, and dizziness."[69] But she identifies no evidence, medical or otherwise, substantiating that need. As mentioned above, the record does not contain any medical opinion from Marquez's physicians addressing any work-related limitations or restrictions caused by her migraines, and she did not

---

[68] *E.g.*, *id.* at 26 (citing Ex. B13F/45, *i.e.*, Tr. at 1056 (Dr. Guerrero's treatment notes); *id.* (citing Ex. B7F/54, *i.e.*, Tr. at 724); *id.* at 24 (citing Ex. B12F, which contains Dr. Rojas-Mendez's treatment notes); *see also Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) ("The fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record."); *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (An "ALJ does not need to comment on every piece of evidence.").

[69] Pl.'s Br. at 16–17.

even testify about her migraines at the hearing before the ALJ. The Court concludes that the ALJ did not err by not including additional limitations, such as an "off-task" limitation, in the RFC based on Marquez's migraine disorder. *See Allen v. Kijakazi*, No. 22-35411, 2023 WL 3918241, at *2 (9th Cir. June 9, 2023) (concluding "the ALJ did not err in formulating the RFC because the record does not establish any functional limitations associated with Allen's headaches").

At the end of the day, "we have no power to determine if the record contains substantial evidence to support [Marquez's] claim; instead, we are confined to questioning only whether substantial evidence supports the [ALJ's] judgment." *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988). Next, the Court turns to the latter question.

**(2)**

The ALJ's RFC formulation states in relevant part that Marquez could perform "sedentary work" as defined in 20 C.F.R. § 416.967(a), except that "[s]he should avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights."[70] The regulation provides that "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).

Marquez does not directly challenge the ALJ's RFC formulation; instead, she challenges two statements that the ALJ made about her migraines in assessing her RFC. Marquez argues that these statements lack support in the evidence of record and therefore are not supported by

---

[70] *Id.* at 24–25.

substantial evidence.[71] The challenged statements appear in the following paragraph of the ALJ's decision:

> The above assessed exertional limitations also account for the claimant's migraines, *as her head pain may be exacerbated by significant lifting/carrying*. Likewise, as a precaution, hazard limitations have been assessed in part to the potential for *fatigue and lightheadedness secondary to her migraines*. Of note, however, neurological examination has been primarily unremarkable since 2022.[72]

Marquez argues that the record does not support any migraine symptoms associated with lifting or carrying, nor does it mention any fatigue or lightheadedness associated with her migraines.[73] Marquez faults the ALJ for interpreting raw medical data and inserting his own lay person opinion.[74]

In support, Marquez cites *Melvin v. Astrue*, where the court stated that an ALJ "is not qualified to interpret raw medical data in functional terms." No. 1:08CV264-SAA, 2010 WL 908495, at *4 (N.D. Miss. Mar. 9, 2010) (citing *Perez v. Sec'y of Health & Hum. Servs*., 958 F.2d 445, 446 (1st Cir. 1991)). In contrast, the Fifth Circuit has said,"[i]t is the responsibility of the ALJ to *interpret* 'the medical evidence to determine a claimant's capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (brackets omitted; emphasis added) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)); *accord Rounds v. Comm'r, Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). After all, "the ALJ's RFC assessment is

---

[71] Pl.'s Br. at 16.

[72] Tr. at 27.

[73] Pl.'s Br. at 16.

[74] *Id.*

an administrative, rather than a medical, determination." *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012).

The Court observes that the challenged statements mirror those in the ALJ's analysis of the persuasiveness of the state agency medical consultants' administrative findings. In that analysis, the ALJ found that the consultants' determinations were unpersuasive[75]—a finding that Marquez does not challenge. There, the ALJ wrote:

> [T]he State agency did not adequately consider the effects of the claimant's hypermobility, undifferentiated connective tissue, and migraines on her functioning, as these were not deemed to be severe impairments. These impairments, in combinations with her autoimmune hepatitis, reasonably limit the claimant's exertional abilities further, *which the undersigned has accounted for by restricting the claimant to a range of sedentary work with additional postural and environmental limitations*.[76]

These statements indicate that the ALJ included additional postural limitations and environmental limitations[77] in the RFC to account for a combination of Marquez's impairments, including migraines and autoimmune hepatitis.

Further, the agency consultants determined that Marquez could lift and/or carry 50 pounds occasionally and 25 pounds frequently[78]—that is, they assessed that Marquez had the RFC to perform "medium work." *See* 20 C.F.R. § 416.967(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). But the ALJ was not persuaded and determined that Marquez had the RFC to perform

---

[75] Tr. at 28.

[76] *Id.* (emphasis added).

[77] "Environmental" limitations pertain to a claimant's ability to, *inter alia*, work with "hazards such as unprotected elevations and dangerous moving machinery." SSR 85-15, 1985 WL 56857, at *8 (SSA 1985).

[78] Tr. at 63, 72–73.

sedentary work, which, as mentioned above, involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, *id*. § 416.967(a); the ALJ's determination about Marquez's lifting or carrying abilities thus was more favorable to Marquez than the consultants' determination. Likewise, the ALJ's RFC is more favorable to Marquez in terms of postural and environmental limitations: For example, whereas the consultants assessed no environmental limitations, the ALJ assessed that Marquez should avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights.[79]

Mindful that in reviewing an ALJ's reasoning for, and explanation of, his findings, "common sense, not technical perfection, is our guide," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012), the Court turns to the ALJ's statements that Marquez challenges. The Court reads the ALJ's statement that "hazard limitations have been assessed in part to the potential for *fatigue and lightheadedness secondary to her migraines*"[80] consistently with the ALJ's discussion of additional limitations in her persuasiveness analysis: the ALJ assessed hazard limitations to account for a combination of impairments, that is, Marquez's migraines and autoimmune hepatitis. As discussed earlier, Marquez herself points out that she reported to Dr. Carcamo that she experiences dizziness due to her migraines,[81] and therefore "lightheadedness secondary to her migraines" in the ALJ's statement refers to "dizziness" associated with her migraines. As for the "fatigue" mention, elsewhere in her decision, the ALJ noted Marquez's

[79] *Compare id*. at 64, 73, *with id.* at 24–25.

[80] *Id.* at 27 (emphasis added).

[81] *Id*. at 724.

testimony about experiencing fatigue from her autoimmune hepatitis[82] and further noted Marquez's complaints about fatigue in various treatment notes.[83] Thus, "fatigue" in the challenged sentence refers to Marquez's fatigue from her autoimmune hepatitis. Consequently, and contrary to Marquez's arguments, the ALJ's mention of "fatigue" and "dizziness" is supported by the record evidence.

As to the other challenged statement that "[t]he above assessed exertional limitations also account for the claimant's migraines, as *her head pain may be exacerbated by significant lifting/carrying*,"[84] Marquez does not argue that the italicized clause is inaccurate. It appears to be based on common knowledge.[85] This clause can reasonably be read as referring to the state agency consultants' determination that Marquez could lift and/or carry 50 pounds occasionally and 25 pounds frequently—a determination that the ALJ rejected in favor of Marquez in the persuasiveness analysis. And in this clause, the ALJ makes a common-sense judgment about the consultants' determination, characterizing the lifting and carrying it contemplates as "significant lifting/carrying." Accordingly, the Court finds that the ALJ committed no error in stating that Marquez's head pain may be exacerbated by significant lifting or carrying. *See Kelly v. Barnhart*, 123 F. App'x 412, 413 (1st Cir. 2005) ("An ALJ may render common-sense judgments about functional capacity." (internal quotes omitted)); *Horn v. Colvin*, No. CIV. 14-

---

[82] *Id.* at 25.

[83] *Id.* at 26.

[84] *Id.* at 27 (emphasis added).

[85] *See Tension headache: Symptoms and Causes*, Mayo Clinic ("[P]hysical activity tends to make migraine pain worse[.]"), https://www.mayoclinic.org/diseases-conditions/tension-headache/symptoms-causes/syc-20353977 (last visited Nov. 20, 2026); Jason C. Ray et al., *Migraine and headache disorders: relationship to exercise and triggers*, BMJ Journals ("Intense physical exertion . . . might provoke migraines."), https://pn.bmj.com/content/early/2026/07/27/pn-2025-004957 (last visited Nov. 20, 2026).

5024-JLV, 2015 WL 5698042, at *11 (D.S.D. Sept. 28, 2015) ("An ALJ is entitled to use common knowledge and experience as part of an analysis . . . . The ALJ is not expressing a medical opinion, but rather, stating an observation from his vantage point.").

Finally, in formulating Marquez's RFC, the ALJ also discussed Marquez's longitudinal treatment records and a consultative examination report prepared by Dr. Emilio Gonzalez-Ayala.[86] As mentioned above, the ALJ's RFC assessment is more restrictive, and therefore more favorable to Marquez, than the state agency consultants' determinations. Therefore, in light of the ALJ's discussion of this evidence, the Court finds that the record furnishes substantial evidence supporting the ALJ's RFC assessment that Marquez could perform sedentary work except that she should avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights. *See Langley v. O'Malley*, No. 22-3008, 2024 WL 3649021, at *4 (7th Cir. Aug. 5, 2024) ("[A]n RFC that is more limiting than an agency doctor's analysis illustrates that the ALJ gave 'reasoned consideration' to the evidence." (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019))); *McCoy v. Kijakazi*, No. 21-11739, 2023 WL 3407159, at *7 (E.D. Mich. Feb. 27, 2023) (finding the ALJ's RFC determination was supported by substantial evidence in part because the state consultant limited the claimant to light work, but the ALJ "rendered a more favorable sedentary RFC"), *R & R adopted*, 2023 WL 3147899 (E.D. Mich. Apr. 28, 2023); *Drinkwine v. Comm'r of Soc. Sec.*, No. CV 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019) ("[C]ourts have found RFC assessments to be supported by

[86] Tr. at 26–28.

substantial evidence when they are more restrictive than the opinion evidence.”), *R & R adopted*, No. 18-12327, 2019 WL 4626674 (E.D. Mich. Sept. 24, 2019).[87]

* * *

In sum, the Court overrules Marquez’s second assignment of error that the ALJ’s RFC assessment is not supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner’s decision is **AFFIRMED**.

**So ORDERED and SIGNED this 20th day of November 2026.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

[87] *See also Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) (“Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand.”).